IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| STEPHEN THOMAS, <br> Institutional ID No. 1657173, <br> SID No. 6912601, <br><br> Plaintiff, <br><br> v. <br><br> ADAM CASTILLO, *et al.* <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 5:17-CV-298-BQ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### REPORT AND RECOMMENDATION AND ORDER OF TRANSFER

The United States District Judge referred this case to the undersigned magistrate judge by order dated January 3, 2018. ECF No. 6. In accordance with said order, the undersigned conducted preliminary screening as described in 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and determined that Thomas's claims against Defendants survive preliminary screening. ECF No. 13. As of today's date, all parties have not consented to jurisdiction by the magistrate judge. In accordance with the order of transfer, the undersigned now enters this Report in regard to the dispositive issues in the case.

### I.   Procedural History

Thomas alleges Correctional Officers (COs) Adam Castillo, Santiago Martinez, and Leticia Clark used excessive force against him in connection with an incident alleged to have occurred on January 3, 2016, at the John Montford Unit (Montford Unit) within the Texas Department of Criminal Justice (TDCJ). Compl., at 1–6 (ECF No. 1).[1] He further claims that COs Nicholas Caro, Frank Foley, and Clark failed to intervene and stop the alleged excessive use of force. *Id.*

---

[1] Page citations to Thomas's pleadings cite to the electronic page number assigned by the court's electronic filing system.

1

Thomas also alleges that COs Martinez and Clark denied him medical treatment following the incident, but admits that a nurse examined and treated the injuries he attributes to the incident on the evening of January 3. *See id.* Thomas likewise contends that COs Martinez and Clark refused to feed him lunch and dinner on January 3, but concedes that he received regular meals beginning on January 4. *Id.* Finally, Thomas asserts that all of the Defendants failed to report the January 3 incident as required by TDCJ policy.[2] *Id.*

The undersigned found that Thomas's claims survived preliminary screening, and entered an order requiring Defendants to answer or otherwise plead to Plaintiff's claims. *See* ECF No. 13. On April 4, 2018, Defendants Adam Castillo and Santiago Martinez filed an Answer. ECF No. 16. That same day, the Office of the Attorney General for the State of Texas (OAG) filed a notice advising the court that Defendants Nicholas Caro, Leticia Clark, and Frank Foley are no longer employed with TDCJ, and the OAG was therefore unable to secure authority to file responsive pleadings on their behalf. ECF No. 17. The OAG did, however, provide Defendants' last known

---

[2] After reviewing Thomas's Complaint and his responses at the evidentiary hearing, it is unclear whether he seeks to allege a claim for deliberate indifference to medical care. *See* Compl., at 2–7. To the extent his Complaint may be construed as alleging deliberate indifference, however, the district court should dismiss such claim because Thomas admits that a nurse cleaned his cuts and provided him with ointment approximately sixteen hours after the alleged use of force incident. The authenticated records further reveal, and Thomas concedes, Montford Unit personnel x-rayed his ribs approximately ten days later, resulting in negative findings. In any event, Thomas does not allege he suffered substantial harm as a result of the alleged delays in treatment. *See Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)) (explaining that a delay in treatment "can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] results in substantial harm"); *see also* 28 U.S.C. § 1915(e)(2)(B) (providing that "the court shall dismiss [a claim] at any time if the court determines that . . . the action or appeal is frivolous or malicious [or] fails to state a claim on which relief may be granted"). Likewise, to the extent Thomas attempts to allege that Defendants refused to provide him lunch and dinner on January 3, he has failed to state a claim of constitutional dimension. *See Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (quoting *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998)) (noting that in *Talib*, the court questioned whether missing fifty meals in a five-month period denied prisoner the "minimal civilized measure of life's necessities," and affirming magistrate judge's dismissal of prisoner's claim for missing eight meals over a seven-month period as frivolous because he "was not denied anything close to a 'minimal measure of life's necessities'"); *see also Taylor v. Kaylo*, 253 F.3d 703, 2001 WL 498686, at *1 (5th Cir. Apr. 12, 2001) (citing *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999)) (explaining that "missing one meal does not rise to the level of a cognizable constitutional injury"). Finally, the district court should also dismiss any claim Thomas attempts to assert with respect to Defendants' alleged failure to report the January 3 incident. *See generally Jones v. Hudnell*, 210 F. App'x 427, 428 (5th Cir. 2006) (citing *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986)) ("A violation of prison regulations, without more, does not give rise to a federal constitutional violation.").

addresses, and the court directed the United States Marshal (USM) to serve them at those addresses. *See* ECF Nos. 18, 19, 20. On April 12, 2018, Defendant Frank Foley filed an answer. ECF No. 22. Unable to locate Defendants Caro and Clark, the USM could not effectuate service and returned the summonses unexecuted. *See* ECF Nos. 27, 28.

Because the USM was unable to serve Defendants Caro and Clark at the addresses provided by the OAG, the court entered an order on June 21, 2018, requiring Thomas to provide the court with the location and addresses of Defendants Caro and Clark within thirty days of the date of the order. ECF. 29. The court advised Thomas that failure to provide the court with such information could result in *sua sponte* dismissal of his claims against Defendants Caro and Clark. *Id.* To date, Thomas has not provided the court with the address and location of either Defendant Caro or Clark; as a result, they have neither been served with process nor filed answers or responsive pleadings herein.

## II.     Discussion

A.   **Thomas's claims against Nicholas Caro and Leticia Clark should be dismissed without prejudice because they have not been timely served in accordance with Fed. R. Civ. P. 4(m).**

Under Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—*must* dismiss the action without prejudice against that defendant . . . ." Fed. R. Civ. P. 4(m) (emphasis added). As discussed above, Defendants Caro and Clark have not been served, and Thomas has not provided the court with their location or address as required by the court's June 21, 2018, order. *See* ECF No. 29 (notifying Thomas that the USM was unable to serve Defendants Caro and Clark at the last known addresses provided by the OAG, and requiring him to furnish the locations and addresses of Caro and Clark within thirty days). Likewise, Thomas

3

has not responded to the court's June 21 order in any way—i.e., he has not provided the court with good cause to extend the time for service. *See* Fed. R. Civ. P. 4(m). More than ninety days have passed since Thomas filed his Complaint and the court entered its orders to answer and requiring additional service. *See* ECF No. 1 (Complaint filed on December 21, 2017); ECF No. 13 (Order for Service and Defendants to Answer, dated March 5, 2018); ECF No. 20 (Sealed Order for Service, dated April 5, 2018, directing USM to personally serve Defendants Caro, Clark, and Foley). The court placed Thomas on notice that his failure to provide appropriate addresses for Defendants Caro and Clark could result in the *sua sponte* dismissal of Defendants. Because Defendants Caro and Clark have not been timely served, and Thomas has not shown good cause to further extend the time for service, the district court should dismiss all of Thomas's claims against Defendants Nicholas Caro and Leticia Clark, without prejudice, for failure to timely serve Defendants in accordance with Federal Rule of Civil Procedure 4(m).

**B.     The district court should enter a scheduling order with respect to Thomas's claims against Defendants Castillo and Martinez for excessive use of force.**

Thomas's use of force claim arises under the Eighth Amendment. To establish a constitutional violation for excessive use of force by a prison official, a plaintiff must show that the defendant unnecessarily and wantonly inflicted pain. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Whether an official's use of force is unnecessary or wanton depends on if the "force was applied in a good-faith effort to maintain or restore discipline or maliciously or sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley*, 475 U.S. at 320). Factors relevant to this determination include, but are not limited to, the following: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officers; and (5) any efforts officers made to temper the severity of a forceful response. *See Hudson*, 503

U.S. at 7; *Baldwin v. Stadler*, 137 F.3d 836, 838 (5th Cir. 1998) (citing *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)).

Here, Thomas alleges that on January 3, 2016, as COs Martinez and Clark were escorting him to the shower at approximately 6 a.m., the officers began making racial slurs and comments. Compl., at 2. Thomas asserts that after he finished showering, CO Castillo cuffed Thomas behind his back and began escorting him back to his cell. *Id.* Thomas claims that as they neared the "officer's desk," CO Martinez approached and took Thomas's left arm to assist in escorting him. *Id.* at 3. Thomas concedes that he kneeled down and refused to walk any further because he did not want CO Martinez escorting him. *Id.* Thomas alleges that COs Castillo and Martinez became upset and pushed his face into the concrete floor. *Id.* He further claims that COs Foley and Caro, who were standing at the officer's desk, grabbed Thomas's legs to restrain them.[3] *Id.* Thomas contends that, while he lay prone on the floor, CO Martinez grabbed his left pinky finger "attempting to break it," and both CO Castillo and CO Martinez began punching him in the head. *Id.* Thomas also alleges that CO Castillo kicked him "in his right side ribcage slow and steadily." *Id.* At the evidentiary hearing, Thomas asserted that the incident lasted approximately two to three minutes. During this time, Thomas claims the officers never provided him with any direction or orders, and that he was cuffed and did not resist after initially kneeling down. *Id.* Thomas alleges, and the authenticated records confirm, that none of the officers escorting Thomas initiated an "incident command system" or contemporaneously reported the alleged use of force.

In addition, Thomas asserts that after begging the officers to stop hitting and kicking him, they apologized and helped Thomas to his feet. As Defendants escorted Thomas back to his cell, however, Thomas claims COs Castillo and Martinez shoved him into the walls and "ran [him] into

---

[3] Other than alleging CO Foley pinned his legs down, Thomas does not allege that CO Foley used any force against him. The court does not interpret Thomas's allegations as alleging an excessive use of force claim against CO Foley.

the door before they opened it." *See id.* Thomas admits that once he entered his cell, he put his hands through the food slot for CO Castillo to retrieve the handcuffs, but he then "jacked" the food slot in a second attempt to garner the attention of a supervising officer. *Id.* Thomas claims that CO Clark "used the iron bean bar tool . . . to hit Plaintiffs [sic] hands and fingers" until he removed them from the food slot. Thomas alleges that as a result of the foregoing, he suffered from a busted lip, cuts under his eye and a black eye, sore and bruised ribs on his right side, and difficulty breathing. *See id.* at 3–4.

At this stage of the proceedings, Thomas's allegations, taken as true, sufficiently state a claim for excessive force under the Eighth Amendment against Defendants Castillo and Martinez. Thus, Thomas's claim against such Defendants survive preliminary screening and should move forward. *See Buckley v. Brown*, No. 3:16-CV-77-N-BH, 2017 WL 876000, at *4 (N.D. Tex. Jan. 31, 2017) (finding plaintiff's claim that officer kneed him in the back and struck him in the ribs after he lay on the ground and did not physically or verbally resist sufficient to survive screening); *Carrington v. Romero*, No. 5:09-CV-175-BG, 2010 WL 6425170, at *4 (N.D. Tex. Aug. 30, 2010) (holding plaintiff's allegation that correctional officer slammed his head into a wall after he was handcuffed sufficient to survive preliminary screening).

### C.  The district court should enter a scheduling order with respect to Thomas's claim against Defendant Foley for bystander liability.

Thomas also alleges that CO Foley failed to intervene and stop the alleged use of force on January 3. Compl., at 3. A prison official who does not personally exert excessive force on a prisoner can nevertheless bear responsibility for failing to protect the prisoner from another's use of force under a theory of bystander liability. *See, e.g., Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Bystander liability for a failure to protect applies if the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent

harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Such liability implicitly requires the presence of the officer at the scene of the alleged constitutional violation. *See Hale*, 45 F.3d at 919. The rationale motivating bystander liability is that "a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." *Terry v. Castleberry*, No. H-06-2025, 2008 WL 687519, at *5 (S.D. Tex. Mar. 12, 2008) (citing *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 n.24 (4th Cir. 2002)).

At the evidentiary hearing, Thomas asserted that CO Foley observed the entire use of force incident and assisted in pinning Thomas's legs down. Specifically, Thomas contends that CO Foley "did not intervene to prevent [the] kicks and blows" allegedly delivered by COs Castillo and Martinez. Compl., at 3. Based on the record as presently developed, the court finds that this claim also survives preliminary screening. *See Buckley*, 2017 WL 876000, at *5 (finding plaintiff's allegations that officer was present during use of force incident and failed to stop another officer's use of force sufficient to survive § 1915 screening).

### III.   Recommendation

For the reasons explained herein, the undersigned recommends that the United States District Court **DISMISS WITH PREJUDICE** in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A any claims Thomas may assert for deliberate indifference to his serious medical needs, failure to report, and failure to provide meals.

The undersigned further recommends that the district court **DISMISS WITHOUT PREJUDICE** all of Thomas's claims against Defendants Nicholas Caro and Leticia Clark due to his failure to timely effectuate service in accordance with Federal Rule of Civil Procedure 4(m).

With respect to Thomas's claims against Defendants Adam Castillo, Frank Foley, and Santiago Martinez for excessive use of force and bystander liability, given the timeframe set forth by the district judge in the referral order, it appears prudent to transfer the case back to the district judge for implementation of a scheduling order. Accordingly, it is the **RECOMMENDATION** of the magistrate judge that a scheduling order should be entered, setting dates certain for pretrial deadlines and filing dispositive motions.

It is therefore **ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge. This case shall hereinafter be designated as Civil Action Number 5:17-CV-298-C.

## IV.     Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: July 31, 2018

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

9